UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

LOOKENS SALOMON,

     Plaintiff,                                  CASE NO.:

vs.

WALMART INC.,
a Foreign Profit Corporation,
d/b/a WALMART,

     Defendant.

_____/

## COMPLAINT

COMES NOW the Plaintiff, LOOKENS SALOMON (hereinafter "SALOMON"), by and through the undersigned Counsel, and sues the Defendant, WALMART INC., a Foreign Profit Corporation, d/b/a WALMART (hereinafter "WALMART"), and alleges the following:

## JURISDICTION AND VENUE

1.     This is a civil action with damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

2.     This Court is vested with federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.  This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367.

3.     Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1391(b) because all actions giving rise to this claim arose in this Judicial Circuit.

## ADMINISTRATIVE PREREQUISITES

4.      All conditions precedent to the maintenance of this action have been met.

5.      On July 30, 2019, Plaintiff SALOMON timely filed a Charge of Discrimination with both the Palm Beach County Office of Equal Opportunity ("OEO") and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging violations of his civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. Chap. 760.01, et seq. ("FCRA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").  A copy of said Charge is attached hereto as **Exhibit "A."**

6.      More than 180 days have passed since SALOMON filed his Charge of Discrimination with the Palm Beach County OEO and the EEOC.

7.      On February 6, 2020, the Palm Beach Office of Equal Opportunity issued a Notice of Dismissal, following Plaintiff's requesting a right to sue and acknowledging that more than 180 days had passed since SALOMON's filing of his Charge. A copy of said Notice of Dismissal is attached hereto as **Exhibit "B."**

8.      On or about August 21, 2020, the U.S. Equal Employment Opportunity Commission issued a Right to Sue Letter. This Notice of Right to Sue was received by KAUFMAN's counsel on September 16, 2020. A copy of said Notice of Right to Sue is attached hereto as **Exhibit "C."**

9.      This Complaint is being filed within ninety (90) days of receipt of the Notice of Right of Dismissal.

## PARTIES

10.     Plaintiff SALOMON is an individual who resided in Palm Beach County, Florida, during the time of his employment with WALMART.  At all times herein mentioned, SALOMON was employed by WALMART located at 4375 Belvedere Road, West Palm Beach, Florida 33406.

11.     SALOMON was and is a member of a group protected under Title VII and the FCRA, namely:

   a.   He is a black male of Haitian descent;

   b.   He complained about acts made unlawful by Title VII and the FCRA, and he thereafter suffered an adverse employment action.

12.     WALMART is duly authorized and licensed to do business in Palm Beach County, Florida.  At all times material, WALMART was and is engaged in the operation of retail, wholesale and other units in various formats around the world, offering an assortment of merchandise and services at low prices, with more than fifteen (15) employees.  As such, WALMART is an "employer" as defined by Title VII and the FCRA.

## GENERAL ALLEGATIONS

13.     Plaintiff SALOMON was employed by WALMART at WALMART's West Palm Beach location (Supercenter #5301) on a continuous basis from November _, 2017 through April 5, 2019. SALOMON was hired first as a standard Cashier for WALMART, and in or about January/February 2018 SALOMON was moved to work as a Cashier in the Money Center at WALMART.

14.     During the period of time in which he was employed by WALMART, SALOMON was subjected to discrimination and harassment based on his national origin by WALMART and its employees, ultimately resulting in his unsubstantiated termination.

15.     While employed by WALMART, SALOMON worked under two managers in the Money Center, Jesse Dunaway and Aurelki (last name unknown) (hereinafter "Dunaway" and "Aurelki"), who recognized SALOMON's hard work and determination in the Money Center.

16.     Notwithstanding his hard work, SALOMON was regularly requested to perform duties far outside of his role as cashier at the Money Center, including WALMART requesting that SALOMON stand at the front door of the store to serve as "security" for the store and sending him out to gather shopping carts which had collected in the parking lot. Additionally, SALOMON consistently was denied any opportunity to move up in employment to a management position with WALMART as a result of his national origin.

17.     WALMART's animus and discriminatory conduct towards individuals of black Haitian descent predates SALOMAN'S employment with WALMART. Specifically, prior to SALOMON's employment, a previous Co-Manager of Haitian descent was accused of fraud and theft and fired by WALMART.

18.     Thereafter, while SALOMON was working in the Money Center, WALMART made accusations toward other employees of Haitian descent. Specifically, WALMART accused a Haitian female cashier of exchanging $100.00 for false currency. These accusations came prior to any investigation into the incident, and after investigation, WALMART discovered that the Haitian employee was not involved but rather it was a white cashier in the same department.

19.     While employed by WALMART, SALOMON noticed a preference by WALMART to employ non-Haitian employees in the Money Center. When two Haitian cashiers, Eilene Delizaire and Geraldine Chevalier, asked to be transferred to the Money Center upon seeing an opening online, Dunaway told the employees there was no opening. Surprisingly, just two weeks later, two non-Haitian cashiers were transferred to the department.

20.     Notably, SALOMON was the sole male cashier of black Haitian descent in the money center.

21.     While a practice of discrimination against employees of Haitian descent was present from the start of SALOMON's employment at WALMART, the discriminatory treatment directed at SALOMON significantly increased following his request for a promotion to an open assistant manager position.

22.     Specifically, in approximately April 2018, SALOMON inquired to Dunaway about an open manager position and the possibility of a promotion, to which Dunaway told SALOMON that in order to be eligible to become a supervisor he would need to pass a "supervisor exam." Notably, other supervisors at WALMART were promoted without being required to take and pass this "supervisor exam."

23.     Thereafter, approximately one week after speaking with Dunaway, SALOMON passed the exam and brought his results to Dunaway. Dunaway then directed SALOMON to apply to an open position and told SALOMON that prior to hiring he would have to be interviewed.

24.     SALOMON immediately sat at a computer and applied to the three (3) "Cashier Store Manager (CSM) Front End" positions which were available for hiring at that time.

25.     After receiving no response for a week, SALOMON reached out to Dunaway and Aurelki to follow-up on the status of his application.

26.     When SALOMON approached Aurelki regarding the managerial positions, however, Aurelki refused to believe that SALOMON had taken and passed the managerial exam, even going so far to falsely accuse SALOMON of having someone else take the test on his behalf.

27.     Aurelki then forced SALOMON to take the same exam again, this time while Aurelki and a coworker, Cynthia Haskins (hereinafter "Haskins"), remained in the room and stood over SALOMON while he took the exam.

28.     In direct contravention to any policy and procedure followed by WALMART, SALOMON was directed by Aurelki to "retake" the supervisor's exam for the benefit of another WALMART employee named Gladys (last name unknown) (hereinafter "Gladys") who could not pass the exam herself. Gladys was not of Haitian descent, but instead, like Aurelki, was of Hispanic descent. Faced with this ethical and moral dilemma and in order to be "eligible" for a supervisory position, SALOMON complied with the direction from management and again passed the exam.

29.     Having proven indisputably that he completed the only "prerequisite" required to be a department manager or supervisor, SALOMON anticipated receiving a response from Dunaway and Aurelki regarding the open positions for which he had already applied. However, after multiple weeks passed by, other individuals of non-Haitian origin received the positions to which SALOMON had applied. SALOMON never even received an interview for any of these positions despite promises to the contrary.

30.     About a month thereafter, SALOMON again applied to a "CSM Front End" position. Again, SALOMON was not interviewed for the position, and WALMART gave the position to another individual of non-Haitian origin.

31.     SALOMON continued applying to any open CSM Front End positions throughout the rest of 2018. Notwithstanding SALOMON's qualifications and efforts to advance his employment, through February 2019, SALOMON repeatedly was denied these positions. SALOMON was not interviewed for any of these positions, and WALMART gave each position to individuals of non-Haitian origin.

32.     In February of 2019, SALOMON went to question Dunaway and Aurelki as to why SALOMON was not considered for any of the positions he applied to when he had completed all of the prerequisites, especially when none of the people who received the positions had taken the "supervisors exam." Dunaway and Aurelki provided no reason for Mr. Salomon not receiving the positions.

33.     Subsequent to this meeting, SALOMON again applied to an open "CSM Front End" position. SALOMON received no interview, and the position was again given to another individual of non-Haitian origin.

34.     Thereafter, SALOMON went to the Store Manager for WALMART, Alex (last name unknown) (hereinafter "Alex"), to complain. Alex offered no insight as to why SALOMON would not have been given any of these positions with his qualifications.

35.     SALOMON then directly asked Alex if his denials for these positions could be because he was Haitian. Alex responded to SALOMON that he did not know if his national origin played a part in him not receiving the positions. SALOMON threatened to call corporate over the issue, but Alex convinced SALOMON to first apply for supervisory positions in other departments.

36.     In March 2019, SALOMON applied to managerial positions in several other departments at WALMART, including two Electronics Department Manager positions and one Hardware Department Manager position. SALOMON did not receive any of these positions, and each position was filled by individuals of non-Haitian origins.

37.     On April 3, 2019, while SALOMON was working his regular shift at the Money Center, an associate processed a payroll check for $1591.10. SALOMON, as he ordinarily did with any other transaction, gave the customer cash for the check and then returned the pay slip to the

customer. This was an ordinary transaction with nothing out the ordinary occurring and with all actions abiding by WALMART policies and procedures.

38.     Thereafter, on April 5, 2019, Dunaway summoned SALOMON to his office where Haskins was also present. Dunaway accused SALOMON of committing fraud, specifically stating that SALOMON had both cashed the customer's payroll check and returned the check to the customer.

39.     Dunaway threatened to have SALOMON arrested, showing SALOMON a photo of him handing paper to a black individual. Dunaway claimed this black individual was SALOMON's family member with no evidence more than the color of their skin.

40.     Dunaway produced a copy of the check that was cashed and a receipt of the transaction in an effort to support the claims against SALOMON. Upon being threatened by police involvement again, SALOMON attempted to calmly point out to Dunaway that the allegations against him could not be true because if he had returned the check to the customer, then Dunaway would not have a copy of the check to show to him.

41.     Notwithstanding the baselessness of the allegations against SALOMON and SALOMON's maintaining of his innocence, SALOMON was fired from his position with WALMART.

42.     Ultimately, the harassment and discrimination faced by SALOMON culminated in his unsubstantiated termination from his position of Money Center Cashier at WALMART on April 5, 2019. Despite illegal discriminatory practices faced by SALOMON as a result of his national origin, SALOMON was not provided any valid or legal reason or justification for his termination.

## COUNT I – NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
## THE FLORIDA CIVIL RIGHTS ACT OF 1992

43.     Plaintiff SALOMON realleges and incorporates all of the allegations set forth in paragraphs 1 through 42 above as if set forth herein.

44.     The FCRA, Fla. Stat. Chapter 760.10(1), reads in applicable part, as follows: "It is an unlawful employment practice for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, **national origin**, age, handicap, or marital status."

45.     WALMART is an "employer" as defined by § 760.02(7) of the Florida Statutes.

46.     SALOMON is a black Haitian male who is guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

47.     SALOMON was qualified for his position as a Money Center Cashier, having received any relevant training and guidance required for his field.  Additionally, he was employed by WALMART with no disciplinary issues for over a year and a half before he began voicing his concerns over discrimination based on national origin in the workforce.

48.     During the course of his employment with WALMART, SALOMON complained about the unfair treatment against employees of black Haitian national origin and the complete lack of consideration of him for managerial positions based on his black Haitian national origin, as detailed above in this Complaint.

49.     WALMART's unlawful employment practices, complained of above, deprived SALOMON of his statutory rights under the FCRA.

50.     Specifically, WALMART and its employees/agents discriminated against SALOMON with respect to his employment because of his national origin by disciplining

SALOMON in a discriminatory way and by terminating him because of his national origin on April 5, 2019.

51.     Other similarly situated employees who were of non-Haitian national origin were treated more favorably than SALOMON by WALMART and its supervisors and employees, including but not limited to the following:

    a.   Other similarly situated, non-Haitian employees were given managerial positions and promotions notwithstanding their lack of taking the "supervisor exam."

    b.   Other similarly situated, non-Haitian employees were not denied entirely of the opportunity to interview for managerial positions with WALMART.

    c.   Other similarly situated, non-Haitian employees were not accused of unsubstantiated allegations of fraud and theft by WALMART.

    d.   Other similarly situated, non-Haitian employees were not required to perform duties far outside their employment requirements, such as stand at the front of the store to serve as "security" for WALMART.

52.     WALMART's actions are violations of the FCRA because WALMART discriminated against SALOMON in the loss of compensation, terms and conditions and/or privileges of SALOMON' employment and thereby damaged him.

53.     As a direct and proximate result of WALMART's conduct and its employees' actions, SALOMON has suffered irreparable harm through his loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, dental insurance, life insurance, and disability insurance, all of which he would have continued to receive had he not been unlawfully terminated.

54.     What is more, the unlawful employment practices complained of above committed by WALMART were willful, wanton, intentional and with malice or with reckless indifference to SALOMON's statutorily protected rights, such that SALOMON is entitled to punitive damages.

55.     Any alleged nondiscriminatory reason for this treatment of SALOMON by WALMART is a mere pretext for the actual reason of discriminating against him based on his national origin.

56.     Specifically, WALMART disciplined SALOMON for pretextual reasons and ultimately terminated him not because of insubordination, lack of qualifications, or misconduct while at work, but rather because SALOMON complained of WALMART's denial of promotions for him to managerial positions for illegal discriminatory reasons and because SALOMON is an individual of Haitian national origin.

57.     SALOMON has been required to retain the legal services of the undersigned Counsel to enforce his rights under the FCRA and is required to pay his attorney a reasonable fee for services rendered in this case.

## COUNT II – NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

58.     Plaintiff SALOMON realleges and incorporates all of the allegations set forth in paragraphs 1 through 42 above as if set forth herein.

59.     Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or **national origin**."  42 U.S.C. § 2000e et seq.

60.     SALOMON is a black Haitian male who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

61.     SALOMON was qualified for his position as a Money Center Cashier, having received any relevant training and guidance required for his field.  Additionally, he was employed by WALMART with no disciplinary issues for over a year and a half before he began voicing his concerns over discrimination based on national origin in the workforce.

62.     During the course of his employment with WALMART, SALOMON complained about the unfair treatment against employees of black Haitian national origin and the complete lack of consideration of him for managerial positions based on his black Haitian national origin, as detailed above in this Complaint.

63.     WALMART's unlawful employment practices, complained of above, deprived SALOMON of his federally protected statutory rights under Title VII.

64.     Specifically, WALMART and its employees/agents discriminated against SALOMON with respect to his employment because of his national origin by disciplining SALOMON in a discriminatory way and by terminating him because of his national origin on April 5, 2019.

65.     Other similarly situated employees who were of non-Haitian national origin were treated more favorably than SALOMON by WALMART and its supervisors and employees, including but not limited to the following:

a.  Other similarly situated, non-Haitian employees were given managerial positions and promotions notwithstanding their lack of taking the "supervisor exam."

b.  Other similarly situated, non-Haitian employees were not denied entirely of the opportunity to interview for managerial positions with WALMART.

    c.   Other similarly situated, non-Haitian employees were not accused of unsubstantiated allegations of fraud and theft by WALMART.

    d.   Other similarly situated, non-Haitian employees were not required to perform duties far outside their employment requirements, such as stand at the front of the store to serve as "security" for WALMART.

66.    WALMART discriminated against SALOMON in violation of Title VII of the Civil Rights Act because of his national origin by subjecting him to a work environment which consistently favored non-Haitian employees, by disciplining SALOMON in a discriminatory way, and by terminating him based on his national origin.

67.    WALMART's actions are in violation of Title VII of the Civil Rights Act because WALMART discriminated against SALOMON with respect to compensation, terms, conditions, and/or privileges of employment because of his national origin, causing him losses and thereby damaging him.

68.    WALMART knew or should have known about their discriminating actions, as listed above, and WALMART failed to take prompt remedial action, in violation of Title VII of the Civil Rights Act.

69.    As a direct and proximate result of WALMART's conduct and its employees' actions, SALOMON has suffered irreparable harm through his loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, dental insurance, life insurance, and disability insurance, all of which he would have continued to receive had he not been unlawfully terminated.

70.     What is more, the unlawful employment practices complained of above committed by WALMART were willful, wanton, intentional and with malice or with reckless indifference to SALOMON's statutorily protected rights, such that SALOMON is entitled to punitive damages.

71.     Any alleged nondiscriminatory reason for this treatment of SALOMON by WALMART is a mere pretext for the actual reason for discriminating against him based on his national origin.

72.     Specifically, WALMART disciplined SALOMON for pretextual reasons and ultimately terminated him not because of insubordination, lack of qualifications, or misconduct while at work, but rather because SALOMON complained of WALMART's denial of promotions for him to managerial positions for illegal discriminatory reasons and because SALOMON is an individual of Haitian national origin.

73.     SALOMON has been required to retain the legal services of the undersigned Counsel to enforce his rights under Title VII of the Civil Rights Act and is required to pay his attorney a reasonable fee for services rendered in this case.

## COUNT III – RETALIATION IN VIOLATION OF
## THE FLORIDA CIVIL RIGHTS ACT OF 1992

74.     Plaintiff SALOMON realleges and incorporates all of the allegations set forth in paragraphs 1 through 42 above as if set forth herein.

75.     The FCRA, Fla. Stat. Chapter 760.10(7), reads in applicable part, as follows: "It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under [Section 760.10]."

76.     WALMART is an "employer" as defined by § 760.02(7) of the Florida Statutes.

77.     SALOMON is a black Haitian male who is guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

78.     SALOMON engaged in a statutorily protected expression, namely he repeatedly complained to supervisors about WALMART's denial of promotions for him to managerial positions as a result of discrimination because of his Haitian national origin, resulting in a hostile work environment and ultimately his termination.

79.     Within weeks of complaining to WALMART's store manager alleging discrimination and harassment because of his Haitian national origin, SALOMON was terminated from his employment with WALMART based off an unsubstantiated claim.

80.     A causal connection exists between SALOMON's repeated complaints to the store manager regarding WALMART's promoting practices, i.e. his statutorily protected expression, and his adverse employment action, namely his termination.

81.     As a direct and proximate result of WALMART's conduct and its employees' actions, SALOMON has suffered irreparable harm through his loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, dental insurance, life insurance, and disability insurance, all of which he would have continued to receive had he not been unlawfully terminated.

82.     What is more, the unlawful employment practices complained of above committed by WALMART were willful, wanton, intentional and with malice or with reckless indifference to SALOMON's statutorily protected rights, such that SALOMON is entitled to punitive damages.

83.     Any alleged nondiscriminatory reason for this treatment of SALOMON by WALMART is a mere pretext for the actual reason for discriminating and retaliating against him based on his national origin.

84.     Specifically, WALMART disciplined SALOMON for pretextual reasons and ultimately terminated him not because of insubordination, lack of qualifications, or misconduct while at work, but rather because SALOMON complained of WALMART's denial of promotions for him to managerial positions for illegal discriminatory reasons and because SALOMON is an individual of Haitian national origin.

85.     SALOMON has been required to retain the legal services of the undersigned Counsel to enforce his rights under the FCRA and is required to pay his attorney a reasonable fee for services rendered in this case.

## COUNT IV – RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

86.     Plaintiff SALOMON realleges and incorporates all of the allegations set forth in paragraphs 1 through 42 above as if set forth herein.

87.     Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3 et seq.

88.     SALOMON is a black Haitian male who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

89.     SALOMON engaged in a statutorily protected expression, namely he repeatedly complained to supervisors about WALMART's denial of promotions for him to managerial positions as a result of discrimination because of his Haitian national origin, resulting in a hostile work environment and ultimately his termination.

90.     Within weeks of complaining to WALMART's store manager alleging discrimination and harassment because of his Haitian national origin, SALOMON was terminated from his employment with WALMART based off an unsubstantiated claim.

91.     A causal connection exists between SALOMON's repeated complaints to the store manager regarding WALMART's promoting practices, i.e. his statutorily protected expression, and his adverse employment action, namely his termination.

92.     As a direct and proximate result of WALMART's conduct and its employees' actions, SALOMON has suffered irreparable harm through his loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, dental insurance, life insurance, and disability insurance, all of which he would have continued to receive had he not been unlawfully terminated.

93.     What is more, the unlawful employment practices complained of above committed by WALMART were willful, wanton, intentional and with malice or with reckless indifference to SALOMON's statutorily protected rights, such that SALOMON is entitled to punitive damages.

94.     Any alleged nondiscriminatory reason for this treatment of SALOMON by WALMART is a mere pretext for the actual reason for discriminating and retaliating against him based on his national origin.

95.     Specifically, WALMART disciplined SALOMON for pretextual reasons and ultimately terminated him not because of insubordination, lack of qualifications, or misconduct while at work, but rather because SALOMON complained of WALMART's denial of promotions for him to managerial positions for illegal discriminatory reasons and because SALOMON is an individual of Haitian national origin.

96.     SALOMON has been required to retain the legal services of the undersigned Counsel to enforce his rights under Title VII of the Civil Rights Act and is required to pay his attorney a reasonable fee for services rendered in this case.

## COUNT V - HOSTILE WORK ENVIRONMENT BASED ON NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

97.     Plaintiff SALOMON realleges and incorporates all of the allegations set forth in paragraphs 1 through 42 above as if set forth herein.

98.     SALOMON brings this action under 42 U.S.C. § 2000(e), et seq. As set forth in the paragraphs herein, WALMART harassed SALOMON thereby subjecting him to a hostile work environment because of his national origin (Haitian) in violation of Section 703(a) of Title VII, 42 U.S.C § 2000e-2.

99.     To establish a prima facie case of hostile work environment and harassment under Title VII, a plaintiff must prove that: (1) he belongs to protected group, (2) he has been subject to unwelcome harassment, (3) the harassment was based on protected characteristic of plaintiff, (4) the harassment was sufficiently severe or pervasive to alter terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability. Here, SALOMON satisfies all five elements.

100.    SALOMON is an individual of Haitian national origin; therefore, he falls within a protected class.

101.    As set forth above, SALOMON has been the subject of unwelcome harassment based on his national origin and the harassment was sufficiently severe and pervasive to alter the terms and conditions of his employment with WALMART and create a discriminatory harassing and hostile work environment.

102.    This conduct was "severe or pervasive," so that it created an environment where a reasonable person would find it hostile or abusive and SALOMON perceived it as abusive.

103.    The harassment occurred frequently, was severe and humiliating and unreasonably interfered with SALOMON's ability to perform his job duties at WALMART.

104.    WALMART is liable for the hostile environment because, as set forth above, its supervisory personnel were responsible for the discriminatory actions complained of, which actions were in violation of law, and no corrective action to stop and/or prevent them were undertaken by WALMART, including the store manager.

105.    The hostile work environment forced to be endured by SALOMON as referred to in the General Allegations of this Complaint was not faced by similarly situated employees of non-Haitian origin at WALMART. Namely:

a.    Other similarly situated, non-Haitian employees were given managerial positions and promotions notwithstanding their lack of taking the "supervisor exam."

b.    Other similarly situated, non-Haitian employees were not denied entirely of the opportunity to interview for managerial positions with WALMART.

c.    Other similarly situated, non-Haitian employees were not accused of unsubstantiated allegations of fraud and theft by WALMART.

d.    Other similarly situated, non-Haitian employees were not required to perform duties far outside their employment requirements, such as stand at the front of the store to serve as "security" for WALMART.

106.    Any alleged nondiscriminatory reason for this treatment of SALOMON by WALMART is a mere pretext for the actual reason for discriminating against him based on his national origin.

107.     Specifically, WALMART disciplined SALOMON for pretextual reasons and ultimately terminated him not because of insubordination, lack of qualifications, or misconduct while at work, but rather because SALOMON complained of WALMART's denial of promotions for him to managerial positions for illegal discriminatory reasons and because SALOMON is an individual of Haitian national origin.

108.     As a direct and proximate result of the actions or omissions of WALMART, SALOMON has sustained those damages set forth above, all of which he is entitled to recover by law.

109.     As a result of the deprivations of rights at the hands of WALMART, SALOMON has been forced to hire an attorney and pay him a reasonable fee, which he is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

## COUNT VI - HOSTILE WORK ENVIRONMENT BASED ON NATIONAL ORIGIN IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

110.     Plaintiff SALOMON realleges and incorporates all of the allegations set forth in paragraphs 1 through 42 above as if set forth herein.

111.     This is an action for damages and injunctive relief brought pursuant to the Florida Civil Rights Act, Fla. Stat. §§ 760.01-760.11.

112.     SALOMON belongs to a protected class within the meaning of the Florida Civil Rights Act, Fla. Stat. §§ 760.01-760.11, because he is an individual of Haitian national origin.

113.     To establish a prima facie case of hostile work environment and harassment under the FCRA, a plaintiff must prove that: (1) he belongs to protected group, (2) he has been subject to unwelcome harassment, (3) the harassment was based on protected characteristic of plaintiff, (4) the harassment was sufficiently severe or pervasive to alter terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is

responsible for such environment under a theory of vicarious or direct liability. Here, SALOMON satisfies all five elements.

114.    SALOMON is an individual of Haitian national origin; therefore, he falls within a protected class.

115.    As set forth above, SALOMON has been the subject of unwelcome harassment based on his national origin and the harassment was sufficiently severe and pervasive to alter the terms and conditions of his employment with WALMART and create a discriminatory harassing and hostile work environment.

116.    This conduct was "severe or pervasive," so that it created an environment where a reasonable person would find it hostile or abusive and SALOMON perceived it as abusive.

117.    The harassment occurred frequently, was severe and humiliating and unreasonably interfered with SALOMON's ability to perform his job duties at WALMART.

118.    WALMART is liable for the hostile environment because, as set forth above, its supervisory personnel were responsible for the discriminatory actions complained of, which actions were in violation of law, and no corrective action to stop and/or prevent them were undertaken by WALMART, including the store manager.

119.    The hostile work environment forced to be endured by SALOMON as referred to in the General Allegations of this Complaint was not faced by similarly situated employees of non-Haitian origin at WALMART. Namely:

a.  Other similarly situated, non-Haitian employees were given managerial positions and promotions notwithstanding their lack of taking the "supervisor exam."

b.  Other similarly situated, non-Haitian employees were not denied entirely of the opportunity to interview for managerial positions with WALMART.

c.  Other similarly situated, non-Haitian employees were not accused of unsubstantiated allegations of fraud and theft by WALMART.

d.  Other similarly situated, non-Haitian employees were not required to perform duties far outside their employment requirements, such as stand at the front of the store to serve as "security" for WALMART.

120.    Any alleged nondiscriminatory reason for this treatment of SALOMON by WALMART is a mere pretext for the actual reason for discriminating against him based on his national origin.

121.    Specifically, WALMART disciplined SALOMON for pretextual reasons and ultimately terminated him not because of insubordination, lack of qualifications, or misconduct while at work, but rather because SALOMON complained of WALMART's denial of promotions for him to managerial positions for illegal discriminatory reasons and because SALOMON is an individual of Haitian national origin.

122.    As a direct and proximate result of the actions or omissions of WALMART to SALOMON, SALOMON has sustained those damages set forth above, all of which he is entitled to recover under the terms of the Florida Civil Rights Act of 1992 as established, Fla. Stat. §§ 760.01-760.11.

123.    As a result of the deprivations of rights at the hands of WALMART, SALOMON has been forced to hire an attorney and pay him a reasonable fee, which he is entitled to recover pursuant to the Florida Civil Rights Act, Fla. Stat. §§ 760.01-760.11.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, LOOKENS SALOMON, demands judgment against Defendant, WALMART INC., and requests the following relief:

1. Enter judgment in favor of SALOMON for WALMART's violations of Title VII and the FCRA.
2. Award SALOMON actual damages suffered;
3. Award back pay and value of lost employment benefits to SALOMON;
4. Award front pay to SALOMON for the years he would have worked absent WALMART's discriminatory treatment;
5. Enter judgment in favor of SALOMON for compensatory damages for the embarrassment, anxiety, humiliation and emotional distress SALOMON has suffered and continues to suffer;
6. Award SALOMON punitive damages;
7. Award to SALOMON all costs and reasonable attorney's fees incurred in connection with this action;
8. Award prejudgment interest on all monetary recovery obtained;
9. An injunction permanently enjoining WALMART, its officers, agents, employees, assigns and all persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of national origin; and
10. Grant such additional or alternative relief as may appear to the court to be just and equitable.

## JURY TRIAL DEMAND

Plaintiff, LOOKENS SALOMON, demands a trial by jury on all issues so triable.

Dated September 18, 2020.

**Sconzo Law Office, P.A.**
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
ANDREA C. SCONZO, ESQUIRE
Florida Bar No.: 0105578
**Primary Email:** greg@sconzolawoffice.com
**Primary Email:** andrea@sconzolawoffice.com